Good morning, Your Honor. Good morning, Counsel. We have a tax case here, and it's dealing with two specific years at issue. And I just want to make sure that the Court and everybody focuses on these two years for these entities, because there is a lot of documents in the record that deal with five different entities and three separate years. So the two parties, we have Integra Engineering, and it's their tax year that ends 11-30-08. And then we have Mr. and Mrs. Kunkel with their tax year ending 12-31-08. It's undisputed in this case that at the time the Commissioner issued their statutory notice of deficiency to these two entities for these two years, it was beyond the three-year statute of limitations. The Commissioner has conceded that that's undisputed. So when the petitioners alleged in their petition that they were barred by the statute of limitations, the petitioners met their prima facie case and met their burden by submitting into evidence the tax returns along with statutory notice of deficiency. That then shifted the burden to the Commissioner, and the Commissioner then had the burden to say, I know my statutory notice of deficiency is late, but here's why I get out. And what the Commissioner typically does in a situation like this is it introduces into evidence a Form 872, which is a unilateral waiver. It's a consent form. Well, the Form 872 that the Commissioner submitted in this case, in the Commissioner's own concession, is utterly meaningless. It makes no sense. It contains years that are not the taxable years at issue in this matter. Now, the Commissioner in its pleading didn't say anything about these forms. Rather, it said we have valid forms, valid on their face, that extend the period for assessment. Well, that is not the case. So what happened is this case goes to trial, and at trial, the Commissioner, through its counsel, says, You know what? These forms are the result of mutual mistake. Please reform them. Now, I'm stressing to the Court that it's Commissioner's counsel who makes this argument. And the reason why I stress that is because there was no testimony in this trial. The Commissioner failed to put anybody on the stand to say, I drafted the Form 872. I made this mistake. This is where the mistake is. This is what we really intended to be on the document. This is why it should be reformed. There is nothing. There is no testimony. There is no pleading. There is nothing at all except an argument on the day of trial that this form, which is conceded to be utterly meaningless, is the result of a mutual mistake and should be reformed. Now, it's also true that your clients didn't provide any testimony, that they didn't understand that these were for the OA tax year, right? That is correct. And my clients did not provide testimony because we had met our burden by establishing a prima facie case. And I assume your clients were also worried about prosecution for perjury if they had so testified. I wasn't the trial lawyer. I don't have an answer to that, Your Honor. Did the taxpayers ever sign that form? Through the power of attorney. Okay. Why would Mr. Bastian have signed a meaningless document? I don't. That is a good question. And my position on that is Commissioner had every opportunity to call Mr. Bastian as a witness in this matter. He's a party to that document. They failed to call him as a witness just like they failed to call their own person who drafted that document as a witness. All these facts as to why was this drafted the way it was, why did it contain this data, why was it signed, that could have all been answered had the Commissioner taken one step to try to meet its burden because the burden had shifted and it shifted from the petitioners to the Commissioner once the tax returns and the Notice of Deficiency was entered into evidence. Mr. Bruzzo, it seems to me the best evidence for the government is probably the negotiations continuing after this form was signed with respect to the 2008 tax years. Now that's, as I understand it, those facts aren't disputed that the negotiations weren't over. No, and what happened there, Your Honor, was according to the record, back in 2010 was the first time correspondence occurred between petitioners and respondents. However, the way the record reads, that was for Integra's 2007 tax year. The 2008 tax year, which is the actual tax year at issue, that does not come into play in the record until February of 2012, after the Form 872 at issue has already been executed. When, in that February letter from the Commissioner to the petitioners that says, you know, here's what we believe your tax should be, that came out February 9th on a couple of them, February 13th on another. Integra Engineering had the statute of limitations run on February 17th of 2012. Petitioners, Mr. and Mrs. Conkle, their statute of limitations did not expire until April 15th of 2012. The petitioners did, on February 27th, submit a document to the Commissioner asking for an administrative review, and it's essentially a protest petition. Now that protest petition was for five entities, for three taxable years, and it was on the merits. And that is the key here. It was on the merits for all three years. It had nothing to do with procedure, no obligation on behalf of the petitioners to say, by the way, the statute of limitations has ran. Rather, it's a merit-based case, and it was for tax year 08, 09, and 10. So the fact that the merits are the same for 08 as they are for 09 as they are for 10, why wouldn't the petitioner include it to try to be done with the Commissioner at that point? So we get to trial then, and we have the Commissioner make the argument that there's mutual mistake. Well, in order to prove mutual mistake, it has to be clear and convincing evidence to the court that the parties have an actual mutual mistake in the document. There was no evidence of a mutual mistake other than the document doesn't make sense. I don't disagree that the document doesn't make sense. It's a bad document. It was drafted in error. But does that mean it's a mutual mistake? The Commissioner did not even put its own agent on the stand who drafted the document or its own agent on the stand who signed the document to say, this is the mistake, this is what it should have been, this is what I intended it to be. Instead, we're left to play a guessing game. Well, we're not, though. There's absolutely no logical reason in the world, is there, for either the Kunkels or their company or Mr. Bastian to sign off on the documents, on the forms that said February 15, 2012 and December 31, 2012. I mean, they were signing those in 2011. The statute of limitations was nowhere near expiring for 2012. There's no logical reason on the planet why anybody would have signed that if they thought it was for that year, right? I think there's nothing in the record that says, is that the only mistake? I mean, I agree the document makes no sense. I agree it's a bad document. But to simply say, as the tax court did, because you signed a Form 872, I'm going to say that you intended to waive a statute of limitations and we're just going to go with the one that's whatever is closest. I mean, are there other errors on that? Why is the December 31 deadline, why is that not an error? There's just no evidence in the record. Is it fair to say that at that point the parties were in an adversarial posture? I think that would be a fair assumption, but I stress the word assumption because there's nothing in the record to support that. My question really goes to whether the taxpayers had an obligation to point out such a mistake to the commissioner. And the case law holds just the opposite, that the commissioner, when they're relying on a document, they have an obligation to be careful in what they do and that a taxpayer is under no obligation to correct the mistakes of the commissioner because they are an arm of government and have a duty to be responsible, just as if I committed an error on my income tax return. If it's an innocent error, I'm still responsible for it. They can't say, well, you know, it's just a mutual mistake. Can you please reform it and not have my penalties? And so that burden then ends up in a situation where a taxpayer can lie in wait, hope to God nobody figures out the mistake, and then if the tax court does, then come in and argue, oh, the tax court shouldn't have reformed? In this specific scenario is what you're saying? Well, I can't say for sure that's what happened in this particular scenario, but one might read these facts to look that way. And the way the case law reads is that the petitioner is under no obligation to correct the errors of the commissioner. Now, to the extent the petitioner did something in furtherance to make the commissioner take action in reliance upon the alleged error that's going on, well, then the commissioner may have an estoppel argument against the petitioner because of the petitioner's actual actions. This is not an estoppel argument case. This is the mutual mistake and the reformation. I know my light's on, and the one thing that I did want to stress is it's a two-step process with the mutual mistake, first finding a mutual mistake and then finding are there enough overt acts in the record to show the true intent of the parties. There are no overt acts in the record to show the intent of the commissioner in this case or the intent of the petitioners. The commissioner's old administrative lead sheet that's in the record shows that as of June 30th of 2012 they did not believe that they had a valid extension to the statute of limitations. Again, the commissioner failed to present any witnesses to testify as to why that document said what it said, rather they just would have this court believe it's another mistake, just like the Form 872 itself. My red light is on unless anybody has any questions. Thank you. Thank you, counsel. Mr. Calderon. Thank you, Your Honor, and may it please the court. The question in this appeal is whether viewing the record in the light most favorable to the tax court's findings, that court committed clear error by finding that the parties' extension agreements contained a mutual mistake and that the parties intended the agreements to extend the time to assess tax for 2008. Those findings are not clearly erroneous. To the contrary, they're supported by substantial evidence in the record. That evidence starts with the agreements themselves. As written, those agreements purport to extend the time to assess tax for tax periods that do not exist. And as written, those agreements would not actually effectuate the extension of any assessment period. And as both the tax court and the Fifth Circuit found in Busheen and as the tax court also found in the Atkinson case, inconsistencies like these on the face of a Form 872A extension agreement are sufficient to show that the forms contain a mistake. Mr. Calderon, is it correct that the IRS assessed an accuracy-related penalty against these taxpayers? Your Honor, nothing has been assessed, technically assessed yet because the assessment period is suspended while the litigation continues. But, yes, there is an accuracy-related penalty. Do you see any irony there? Your Honor, I would see an irony if this were not a mutual mistake. There would certainly be an irony. But there's ample evidence in the record that both parties believed that these agreements applied to 2008. Both taxpayers believed that this was intended to do something else, as opposed to just saying, look, somebody's made a mistake at the IRS, this is a meaningless document, I'll sign it. It's harmless. Your Honor, that evidence begins with the particular mistake at issue. The assessment period for income tax runs from three years from the due date of a return. There's no testimony to that effect, is there? Well, this is just a legal rule in the Code, Your Honor, in Section 65. Yes, I'm trying to understand what evidence there is with respect to the taxpayer's intention regarding the signature on the mistaken form. Your Honor, it's undisputed that the taxpayer's representative who signed these forms is an attorney knowledgeable in tax procedure and law. And the dates listed on these forms are three years after the day when the taxpayer's returns for tax year 2008 would normally be due, which is to say the day on which the assessment period for 2008 would end. The dates mistakenly entered on the forms, therefore, have a direct connection that taxpayer's representative would have recognized to tax year 2008 and no connection at all to any other tax year. Why isn't that just speculation as compared to actually putting some evidence on it, since you've got an adversarial relationship? Why would it be unreasonable for even an experienced tax advocate to say, Look, they've made a mistake. They've asked me to sign this meaningless document. It's harmless to do so. Your Honor, it's not speculation. It's an inference from the particular mistake on the form. And there's no requirement in mutual mistake cases that the party asserting mutual mistake provide live testimony as to the party's intent. There's a requirement for clear and convincing evidence. This is true, Your Honor. Here we have no admission of mistake on either side. Who's the person who signed the 872 for the IRS? I believe it was just a revenue agent, Your Honor. And was she called to explain, Gee, I must have made a mistake. I meant to refer to the 2008 tax year. No, Your Honor. Neither party called any witnesses. But in the Woods case, in which the tax court first established its own authority to reform contracts, that case also involved a Form 872A extension agreement. And the tax court found, purely on the basis of circumstantial evidence, largely consisting of the sole fact that, although the forms referred to an entity that had no relationship to the taxpayer, the individual taxpayer in that case owned a similarly named entity, the tax court held that the agreements contained a mutual mistake and were intended by both parties to pertain to taxpayer's entity. Okay. So the tax court said that. Does anybody else think that's enough to show mutual mistake? Well, Your Honor, the Sixth Circuit in the Hanover insurance case, in the context of a commercial general liability policy, held that circumstantial evidence concerning the fact that the question was whether that policy had an exclusion for professional liability claims. There was no exclusion in the plain language of the policy. The insurer claimed mutual mistake, and the Sixth Circuit upheld a jury verdict of mutual mistake over a motion for professional liability policy. So why are we stretching? Why the effort to stretch the law so far here? Your Honor, in light of the extant case law, this is not a stretch. And the agreement is not the only circumstantial evidence that shows both the commissioner's intent and taxpayer's intent. The Fifth Circuit and the tax court, both courts in Busheen, held that, recognized that, the IRS seeks extensions of the assessment period only at the end of the period. I know you had a cover letter, correct? In Busheen that contradicted, so you've got clear evidence that this is what was meant. There was also a cover letter. There's nothing comparable here, is there? No, Your Honor, there's no cover letter here. But both courts in Busheen also relied on the fact that the IRS seeks extensions only toward the end of an assessment period. Only the years 2008, 2009, and 2010 were under audit in this case. And it was only the assessment period for year 2008 that was drawing to a close when the IRS requested taxpayers to sign these extension agreements. Furthermore, the protest letter, which taxpayers referred to in their argument, could have included procedural arguments. It could have raised a statute of limitations argument. If taxpayers believed that the extension forms had not applied to tax year 2008, if they had not intended those forms to apply to tax year 2008, they would have believed that they had a perfectly good waterproof argument that at the time they sent the protest letter, Integra Engineering could no longer be assessed with tax for tax year 2008, and yet they chose not to raise that argument in their protest letter. So the timing of the audit, the agreement itself, the course of negotiations following the signing of the forms that continued to refer to tax year 2008, and the protest letter all give rise to a very strong inference that both the IRS and taxpayers intended these agreements to apply to 2008. Moreover, if the agreements were not intended to apply to 2008, the question becomes what assessment period they were intended to apply to. And there's no reason at all for either the IRS or taxpayers to have intended these agreements to apply to any other period, and taxpayers have suggested no such reason. As to the administrative lead sheet that counsel mentioned, it's undisputed that that sheet is not relevant to taxpayers' intent in signing the agreement. Why isn't it relevant to your intent? Your Honor, it's relevant but entitled to very little weight in determining the IRS's intent for two reasons. One is that it's flatly contradicted by another administrative lead sheet in the record. That sheet pertains to another entity owned and controlled by Craig Kunkel. That entity signed a Form 872A extension agreement that contained a precisely analogous mistake, and the lead sheet for this entity reflects that the assessment period for 2008 had been extended. So there are lots of mistakes, right? So where do we find this? This is in the other lead sheet that you say was correct or that reflected the correct intent but the mistaken content of the document. Your Honor, it's cited in our brief. I don't have the precise page number in front of me. It's in the section concerning the taxpayers' arguments, if you'll bear with me for one moment. Page 27. Thank you, Your Honor. So it's Exhibit 46J to the party stipulation of facts, Your Honor. So is it the IRS's intention, if allowed to go forward with this, to pursue the accuracy-related penalty? As far as I know, Your Honor, yes. Don't you find that, I mean, beyond irony, in essence, at this point? No, Your Honor, because these agreements contained a mutual mistake and the taxpayers' returns. It's undisputed on appeal to satisfy the requirements for an accuracy-related penalty. If there are no further questions, I'll finish there. Thank you. Thank you very much. Mr. Bruzzo, your time has expired, so the case will be taken under advisory.